**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.                                           **JURY TRIAL DEMANDED**

**APPROXIMATELY $9,854,646.81 SEIZED FROM WELLS FARGO ADVISORS ACCOUNT NUMBER 3700-8508 IN THE NAME OF KRONOS ENTERPRISES CORP.;**

**APPROXIMATELY $6,968,670.01 SEIZED FROM WELLS FARGO ADVISORS ACCOUNT NUMBER 8950-0365 SEIZED IN THE NAME OF KRONOS ENTERPRISES CORP.;**

**APPROXIMATELY $14,691,851.79 SEIZED FROM WELLS FARGO ADVISORS ACCOUNT NUMBER 4850-9732 IN THE NAME OF KRONOS ENTERPRISES CORP.;**

**APPROXIMATELY $7,791,854.82 SEIZED FROM WELLS FARGO ADVISORS ACCOUNT NUMBER 7103-8027 IN THE NAME OF LEO JOSE D'AMATO;**

**APPROXIMATELY $34,280.03 SEIZED FROM BANK OF AMERICA ACCOUNT NUMBER 89807164081 IN THE NAME OF NATALINO D'AMATO;**

**APPROXIMATELY $746,950.98 SEIZED FROM BANK OF AMERICA ACCOUNT NUMBER 898095788895 IN THE NAME OF LEO JOSE D'AMATO; and**

**APPROXIMATELY $5,897,975.66 SEIZED FROM TIGRESS FINANCIAL PARTNERS ACCOUNT NUMBER P82-004055,**

      **Defendants** *in rem*.

_____/

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

    COMES NOW, Plaintiff, United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, to allege upon information and belief as follows:

## I. INTRODUCTION

1. This is a civil action for forfeiture *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(A), (1)(C), and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and the Federal Rules of Civil Procedure, to forfeit funds on deposit in bank accounts, and any interest accrued since their seizure, that constitute proceeds of foreign bribery offenses, property involved in money laundering or a conspiracy to commit money laundering, or property traceable to such property ("Defendant Accounts"). The Defendant Accounts are more fully described as:

(i) approximately $9,854,646.81 in U.S. currency from Wells Fargo Advisors account number 3700-8508 in the name of Kronos Enterprises Corp. ("Defendant Account 1");

(ii) approximately $6,968,670.01 in U.S. currency from Wells Fargo Advisors account number 8950-0365 in the name of Kronos Enterprises Corp. ("Defendant Account 2");

(iii) approximately $14,691,851.79 in U.S. currency from Wells Fargo Advisors account number 4850-9732 in the name of Kronos Enterprises Corp. ("Defendant Account 3");

(iv) approximately $7,791,854.82 in U.S. currency from Wells Fargo Advisors account number 7103-8027 in the name of Leo Jose D'Amato ("Defendant Account 4");

(v) approximately $34,280.03 in U.S. currency from Bank of America account number 898071640481 in the name of Natalino D'Amato ("Defendant Account 5")

(vi) approximately $746,950.98 in U.S. currency from Bank of America account number 898095788895 in the name of Leo Jose D'Amato ("Defendant Account 6"); and

(vii) approximately $5,897,975.66 in U.S. currency from Tigress Financial Partners account number P82-004055 in the name of Natalino D'Amato and Leo Jose D'Amato Buonsenno ("Defendant Account 7").

## II.     JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter. *See* 28 U.S.C. §§ 1345, 1355(a).

3. This Court has *in rem* jurisdiction over the Defendant Accounts. *See* 28 U.S.C. §§ 1345, 1355(a). The Defendant Accounts have been seized and are in the custody of the United States.

4. Venue for this action is proper in the Southern District of Florida because acts or omissions giving rise to the forfeiture occurred in this District. *See* 28 U.S.C. § 1355(b)(1).

## III.    FACTUAL ALLEGATIONS

### A. Introduction

5. Petróleos de Venezuela, S.A. ("PDVSA") is the state-owned and state-controlled oil company of Venezuela. PDVSA and its subsidiaries and affiliates are responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provide funding for other operations of the Venezuelan government.

6. PDVSA has entered into joint ventures with foreign oil companies in the oil-rich Orinoco belt in Venezuela to leverage the expertise of the foreign oil companies (collectively, the "PDVSA Subsidiaries"). PDVSA maintains a majority stake in, and controls, the PDVSA Subsidiaries, and that control extends to the procurement process. The PDVSA Subsidiaries include the following entities:

   (i)   Petrocedeño S.A. ("Petrocedeño"), a joint venture between Total SA of France, Equinor ASA (formerly Statoil) of Norway, and PDVSA;

   (ii)  Petropiar S.A. ("Petropiar"), a joint venture between Chevron Corporation of the United States and PDVSA;

   (iii) Petromonagas S.A. ("Petromonagas"), a joint venture between Rosneft Oil Company of Russia and PDVSA;

(iv) Petrolera Sinovensa S.A. ("Sinovensa"), a joint venture between China National Petroleum Company and PDVSA; and

(v) Petromiranda S.A. ("Petromiranda"), a joint venture between five Russian oil companies that make up the National Petroleum Consortium (Gazprom, Lukoil, Rosneft, Surgutneftegas, and TNK-BP) and PDVSA.

7. Natalino D'Amato ("N. D'Amato") and Leo D'Amato ("L. D'Amato") (the "D'Amatos") are dual citizens of Venezuela and Italy. The D'Amatos maintained personal and investment bank accounts at multiple banks in the Southern District of Florida.

8. N. D'Amato owned or controlled various Venezuelan companies that sold goods and services to the PDVSA Subsidiaries. These companies included the following: Venezolana de Mecanizado C.A. ("Vemeca"), Alpha Energy de Venezuela C.A. ("Alpha"), Industria Tecno Parts C.A. ("ITP"), and Industria Nacional de Goma C.A. ("ING") (collectively, the "D'Amato Companies").

9. L. D'Amato held the position of Vice President of Vemeca.

10. Kronos Enterprises Corp. ("Kronos") is a personal investment company incorporated in St. Kitts and Nevis of which N. D'Amato and L. D'Amato each own and control fifty percent.

11. Venezuelan Official 1 was a senior procurement official at Petromonagas between in or around 2011 and in or around March 2015, and a senior procurement official at Petrocedeño between in or around March 2015 and in or around December 2017.

12. Venezuelan Official 2 was a procurement analyst at Petrocedeño between in or around 2014 and in or around 2017.

### B. Bribes for Procurement Contracts Scheme

13. N. D'Amato unlawfully offered things of value to Venezuelan officials working at the PDVSA Subsidiaries in exchange for the officials' assistance in getting procurement contracts,

4

many of which were inflated. The officials also assisted the D'Amato Companies in obtaining inside information about contract solicitations, and securing payment on the contracts.

14. The D'Amato Companies maintained this ongoing relationship based upon these bribe payments beginning in at least 2013. The D'Amato Companies consistently made bribe payments, and, as a result, the PDVSA Subsidiaries reliably awarded them contracts. But for the agreement to pay bribes, most of these contracts would not have been awarded.

15. Between in or around 2013 and in or around 2017, each of the D'Amato Companies, Vemeca, Alpha, ITP and ING, had a bank account at Mercantil Bank in the Southern District of Florida, for which N. D'Amato had signature authority at all relevant times (collectively, the "Mercantil Accounts"). L. D'Amato had signature authority for the Mercantil Accounts in the name of Vemeca, ITP and ING beginning in or around December 2015.

16. The four Mercantil Accounts were used both to receive payments from the PDVSA Subsidiaries and to make bribe payments to the Venezuelan officials.

17. Between in or around 2013 and in or around 2017, wire transfers were sent from the D'Amato Companies totaling more than $160 million in U.S. currency to be made from bank accounts of the PDVSA Subsidiaries to the Mercantil Accounts, including:

(i) a total of approximately $99.8 million from Petrocedeño;

(ii) a total of approximately $34.4 million from Petropiar;

(iii) a total of approximately $15.5 million from Petromonagas;

(iv) a total of approximately $11.3 million from Sinovensa; and

(v) a total of approximately $1 million from Petromiranda.

18. Bribes were paid from the Mercantil Accounts to Venezuelan officials who influenced the award or payment of contracts for each of the PDVSA Subsidiaries.

19.     For example, in or around May 2015, N. D'Amato offered to pay Venezuela Official 1 approximately $1 million in exchange for Venezuelan Official 1's assistance in awarding Petrocedeño contracts to the D'Amato Companies and affording the D'Amato Companies other business advantages. Payments of at least $1 million were subsequently made for the benefit of Venezuelan Official 1 in Panama from certain Mercantil Accounts in the Southern District of Florida.

20.     Venezuelan Official 1 provided N. D'Amato with advanced notice of contract solicitations at Petrocedeño, coordinated with other Venezuelan officials to ensure that contract bids by the D'Amato Companies were accepted by Petrocedeño, and ensured that payment were expedited to the D'Amato Companies.

21.     From in or around November 2014 through in or around December 2017, wire transfers totaling at least $800,000 were made for the benefit of Venezuelan Official 2 from certain Mercantil Accounts in the Southern District of Florida to a corporate account controlled by Venezuelan Official 2 in the United States and Panama.

22.     Venezuelan Official 2 notified N. D'Amato of upcoming procurement needs of Petrocedeño and assisted in the composition of the bid to ensure that the D'Amato Companies had an advantage over other bidders.

### C. Laundering of Proceeds

23.     From in or around 2013 until on or about December 19, 2017, the four Mercantil Accounts were primarily funded by payments from the PDVSA Subsidiaries and maintained a positive balance. The Mercantil Accounts subsequently funded other accounts controlled by the D'Amatos and the D'Amato Companies. In sum, the Mercantil Accounts, funded, directly or indirectly the Defendant Accounts, as follows:

| **Defendant Account** | **Approximate Dates** | **Direct and Indirect Transfers from Mercantil Accounts** |
|---|---|---|
| 1 | December 12, 2016 through September 21, 2018 | • Approximately $11.5 million from a Wells Fargo account in the name of Vemeca, which received approximately $19 million from the Mercantil Accounts,<br>• Approximately $8.7 million from a Mercantil Bank account in the name of Kronos, funded by a different Mercantil Bank account in the name of Kronos, which received approximately $8.8 million from the Mercantil Accounts,<br>• Approximately $8.2 million from a Mercantil Bank account in the name of N. D'Amato and L. D'Amato, which received approximately $10 million from the Mercantil Accounts,<br>• Approximately $3.1 million from Defendant Account 3, which was funded by a Wells Fargo account in the name of Vemeca and Defendant Account 1, and<br>• Approximately $2.2 million from the ITP Mercantil Account |
| 2 | September 18, 2018 | Approximately $7 million from Defendant Account 1 |
| 3 | February 10, 2017 through November 17, 2017 | • Approximately $4 million from a Wells Fargo account in the name of Vemeca, and<br>• Approximately $5.4 million from Defendant Account 1 |
| 4 | March 10, 2017 through September 30, 2018 | • Approximately $1.5 million from Defendant Account 1, and<br>• Approximately $230,000 from Defendant Account 3 |
| 5 | June 15, 2016 through April 28, 2017 | • Approximately $3 million from the ITP Mercantil Account, and<br>• Approximately $75,000 from the Vemeca Mercantil Account |
| 6 | February 16, 2018 | Approximately $3 million from Defendant Account 5 |
| 7 | September 27, 2017 through November 8, 2017 | Approximately $7.2 million from a Titleist Asset Management account in the name of N. D'Amato and L. D'Amato, which received approximately $4.9 million from the Mercantil Accounts |

24. On or about February 22, 2019, the Defendant Accounts were seized pursuant to a judicial seizure warrant.

### IV. BASIS FOR FORFEITURE

25. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

26. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

27. Pursuant to 18 U.S.C. § 1956(a)(1)(A)(i), it is a federal crime, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [to] conduct or attempt[] to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity[.]"  Pursuant to 18 U.S.C. § 1956(a)(2)(A), it is a federal crime to "transport[], transmit[], or transfer[], or attempt[] to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity[.]"

28. Pursuant to 18 U.S.C. § 1957, it is a federal crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]"

29. Pursuant to 18 U.S.C. § 1956(h), it is a federal crime to conspire to commit any offense in violation of 18 U.S.C. § 1956 or 1957.

30. A "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7)(B)(iv) to include, among other things, with respect to a financial transaction occurring, in part, in the United States, a foreign offense involving bribery of a public official, and the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official.

31. Bribery of a public official is a criminal offense in Venezuela under the Law Against Corruption published in the Venezuelan Official Gazette, or Gaceta Oficial, on November 19, 2014.

## FIRST CLAIM
### Proceeds of Foreign Bribery Offenses
### (18 U.S.C. § 981(a)(1)(C))

32. The factual allegations in paragraphs 1 to 31 are re-alleged and incorporated by reference herein.

33. As set forth above, the Defendant Accounts constitute or were derived from proceeds traceable to a foreign offense involving bribery of a public official, or a conspiracy to commit such offense that occurred, in part, that occurred, in part, in the United States.

34. Accordingly, the Defendant Accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Property Involved in Money Laundering Conspiracy
### (18 U.S.C. § 981(a)(1)(A))

35. The factual allegations in paragraphs 1 to 31 are re-alleged and incorporated by reference herein.

36. As set forth above, the Defendant Accounts were involved in transactions or attempted transactions in a conspiracy to commit money laundering in violation of 18 U.S.C.

§ 1956(a)(1), (a)(2) or 1957, all in violation of 18 U.S.C. § 1956(h), or constitute property traceable to such property.

37. According, the Defendant Accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRD CLAIM
### Property Involved in Laundering Transactions Greater than $10,000
### (18 U.S.C. § 981(a)(1)(A))

38. The factual allegations in paragraphs 1 to 31 are re-alleged and incorporated by reference herein.

39. As set forth above, the Defendant Accounts were involved in transactions or attempted transactions in property of a value greater than $10,000 that was derived from specified unlawful activity in violation of 18 U.S.C. § 1957, or constitutes property traceable to such property.

40. Accordingly, the Defendant Accounts are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

**WHEREFORE**, Plaintiff, the United States of America requests that: that the Clerk of the Court issue warrants for arrest of the Defendant Accounts; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Accounts; that the

Defendant Accounts be forfeited and condemned to the United States; and such other and further relief as this Honorable Court may deem just, necessary, and proper.

                                        Respectfully submitted,

                                        ARIANA FAJARDO ORSHAN
                                        UNITED STATES ATTORNEY

BY:    _____
                                        Adrienne E. Rosen
                                        Assistant United States Attorney
                                        Court ID No. A5502297
                                        U.S. Attorney's Office
                                        99 NE 4th Street, 7th Floor
                                        Miami, Florida 33132-2111
                                        Tel: (305) 961-9338
                                        Fax: (305) 536-4089
                                        Adrienne.Rosen@usdoj.gov

## VERIFICATION

I, SHAUNA WILLARD, hereby verify and declare, under penalty of perjury, that I am a Special Agent with Homeland Security Investigations ("HSI") and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of HSI.

Executed on this 30 day of October, 2020.

_____
Shauna Willard
Special Agent
Homeland Security Investigations